UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALBERT CHAVARRIA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13–4712** |
| **METROPOLITAN LIFE INSURANCE COMPANY** | **SECTION "H" (4)** |

## ORDER AND REASONS

Before the Court are Cross-Motions for Summary Judgment (Docs. 24 & 25). For the following reasons, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED. The Court will enter final judgment in favor of Plaintiff.

## BACKGROUND

Plaintiff filed this suit seeking reversal of the denial of long-term disability benefits under an employee disability benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[1] Defendant is the administrator of the plan.

---

[1] 29 U.S.C. §§ 1001–1461.

Plaintiff was employed by DHH Investments as an automobile body repairman ("bodyman"). As part of his employment, Plaintiff participated in a disability benefits plan. Defendant funded the plan through an insurance policy it sold to Plaintiff's employer. Defendant also was responsible for all benefits determinations.

In October of 2009, Plaintiff was awarded short-term disability benefits on the basis of an inguinal hernia. He was paid benefits until May of 2010, the maximum duration available under the plan. In May of 2010, Defendant opened a new claim on Plaintiff's behalf for long-term disability benefits and Defendant paid these benefits from May of 2010 until April 4, 2012. On April 5, 2012, Defendant contacted Plaintiff and informed him that he no longer met the plan's definition of disabled and that his benefits would be terminated effective April 4, 2012. Plaintiff appealed this decision through Defendant's administrative review process. After receiving a final decision denying his claim for benefits, Plaintiff filed the instant suit.

## LEGAL STANDARD

"The summary judgment standard for ERISA claims is 'unique,' because the Court acts in an appellate capacity reviewing the decisions of the administrator of the plan."[2] "Where the decision to grant or deny benefits is reviewed pursuant to ERISA, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court.'"

---

[2] *Reed v. Huntington Ingalls Indus., Inc.*, No. 11–1816, 2012 WL 4460822, at *2 (E.D. La. Sept. 26, 2012).

An administrator's decisions regarding plan terms and eligibility for benefits are subject to *de novo* review in the district court "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[3] If the plan grants such discretion, the administrator's determinations are reviewed only for abuse of discretion.[4] In the Fifth Circuit, an administrator's factual determinations are always reviewed for abuse of discretion, regardless of whether the plan grants the administrator discretionary authority.[5] The parties concede, and the Court is convinced that, the abuse of discretion standard applies to this matter.

Under this standard, the Court looks to whether the administrator acted arbitrarily or capriciously.[6] "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'"[7] The Court will uphold the administrator's decision "if it is supported by substantial evidence."[8] The Court's review "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end."[9] "A district court may not engage in *de novo* weighing of the

---

[3] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[4] *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).

[5] *Id.*

[6] *Meditrust Fin. Servs. Corp. v.. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999).

[7] *Id.* at 215

[8] *Id.*

[9] *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009).

evidence."[10]

## LAW AND ANALYSIS

The Court begins its discussion with the issues on which the parties agree. There is no dispute that Plaintiff was entitled to short-term disability benefits as a result of his injury or that Plaintiff was initially entitled to long-term disability benefits. The parties also agree that, under the terms of the plan, Plaintiff was only entitled to long-term disability benefits if "due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and . . . you are unable to earn more than 80% of your Predisability Earnings . . . at your Own Occupation[11] for any employer in your Local Economy."[12] Therefore, the sole issue presented is whether, on April 4, 2012, Plaintiff was capable of earning more than 80% of his predisability earnings working as a bodyman. Defendant concluded that he was. This Court must determine whether that decision was arbitrary and capricious.

---

[10] *Dramse v. Delta Family-Care Disability and Survivorship Plan*, 269 Fed. Appx. 470, 478 (5th Cir. 2008).

[11] "'Own Occupation' means the activity that you regularly perform and that serves as your source of income. It is not limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other employer." Administrative Record at M-0018. The administrative record for Plaintiff's claim was submitted to the Court manually, thus it does not appear in the electronic Court record. Where the Court cites to the administrative record, it does so using the bates stamped pagination contained in the record.

[12] This definition of disability only applied for the first 24 months that Plaintiff received benefits under the plan. After 24 months, the plan would only pay benefits if Plaintiff was unable to earn more than 60% of his predisability earnings at any occupation in the local economy.

It is helpful to begin with a review of Plaintiff's medical and claim history.

### A. Medical and Claims History

On October 14, 2009, Plaintiff experienced severe pain in his abdominal and groin area while at work. He was transported to the hospital where he was diagnosed with an inguinal hernia. Plaintiff underwent surgery to repair the hernia. While the surgery appears to have been successful, Plaintiff continued to experience severe pain in his lower abdomen. When Plaintiff's pain failed to abate, he was referred to Dr. Skaribas, a pain management specialist.

Dr. Skaribas first saw Plaintiff on April 8, 2010. Dr. Skaribas diagnosed Plaintiff with bilateral ilioinguinal neuralgia, or severe nerve pain in the groin area.[13] Plaintiff was prescribed pain medication and scheduled for a nerve block procedure. The nerve block was performed on August 17, 2010, and Plaintiff experienced temporary improvement.

On June 23, 2010, pursuant to a request from Defendant, Plaintiff's employer submitted a form detailing the requirements of a bodyman. The form indicated, as relevant to Plaintiff's claim, that a bodyman was required to occasionally lift up to fifty pounds and was never required to lift more than one hundred pounds. Curiously, Plaintiff's employer did not indicate with what frequency bodymen were required to lift fifty to one hundred pounds.

On March 25, 2011, Dr. Skaribas submitted an "attending physician statement" to Defendant. Dr. Skaribas indicated that Plaintiff was suffering from chronic pain syndrome and ilioinguinal neuralgia and that Plaintiff was

---

[13] *See* Stedman's Medical Dictionary 199700, 271340 (27th ed. 2000).

incapable of standing for any period of time or lifting any weight.

In July of 2011, Plaintiff was in an automobile accident that Dr. Skaribas believed exacerbated Plaintiff's condition.

Dr. Skaribas's notes from September of 2011 indicate that Plaintiff continued to experience severe nerve pain following the nerve block procedure.

Dr. Skaribas saw Plaintiff again in October and November of 2011 and noted on both occasions that Plaintiff was continuing to experience severe pain.

On January 11, 2012, Dr. Skaribas saw Plaintiff and reviewed an MRI that was completed in late 2011. The MRI report indicated that Plaintiff had a multi-level disc degeneration in his lumbar spine with multiple herniated discs.[14] Dr. Skaribas noted that Plaintiff was continuing to experience severe pain.

On February 9, 2012, at Defendant's request, Plaintiff underwent an IME with Dr. Silver. Dr. Silver noted that Plaintiff expressed complaints of severe pain in his groin, lower back, and legs. Dr. Silver concluded that Plaintiff was suffering from chronic pain syndrome, ilioinguinal neuritis, and chronic low back syndrome with herniated discs. Dr. Silver expressed some skepticism regarding the credibility of Plaintiff's pain complaints, as well as Plaintiff's diagnosis of ilioinguinal neuritis, and opined that Plaintiff was able to return to work. Dr. Silver did not identify or discuss the nature of Plaintiff's prior work.

Defendant wrote to Dr. Silver and requested clarification regarding what work Plaintiff would be able to do, noting that Plaintiff had previously worked

---

[14] This MRI report is not in the administrative record, however, it appears that Defendant had the report at some point as it is referenced in the report prepared by Dr. Silver. *See* M-0344.

as a bodyman and that the bodyman job was classified as heavy work. Dr. Silver responded on March 12, 2012 and opined that Plaintiff was able to work no more than eight hours per day and lift no more than fifty pounds.

On March 14, 2012, Dr. Skaribas saw Plaintiff and noted that he was continuing to experience severe pain in his back, groin, and legs. Dr. Skaribas referred Plaintiff to a spine surgeon and reduced Plaintiff's narcotic dosage in an effort to reduce the risks of possible opioid dependency.

On April 5, 2012, Defendant informed Plaintiff that his disability benefits were terminated, effective April 4, 2012. Defendant specifically cited the report of Dr. Silver and noted that Plaintiff was able to lift up to fifty pounds and that his prior job as a bodyman did not require lifting more than fifty pounds.

On May 8, 2012, Dr. Skaribas wrote a letter to Defendant. Dr. Skaribas indicated that he had received a copy of Dr. Silver's report, and that he disagreed with his findings. He further noted that an examination of Plaintiff revealed both objective and subjective findings that supported a finding of disability, and that Dr. Skaribas's evaluation of Plaintiff's functional capacity had not changed since March of 2011.

On June 15, 2012, the Social Security Administration ("SSA") issued a decision denying Plaintiff's request for Social Security Disability benefits. The Administrative Law Judge ("ALJ") found that Plaintiff suffered from chronic ililoinguinal neuraliga and degenerative disc disease and that Plaintiff was not capable of returning to his prior job as a bodyman. Specifically, the ALJ found that Plaintiff was only capable of lifting up to 20 pounds occasionally and that

7

he was "unable to perform past relevant work."[15] Because the ALJ found that Plaintiff had the ability to perform some work, Plaintiff's claim for social security disability benefits was denied.

Dr. Skaribas saw Plaintiff again in May, July, and September of 2012 and noted that Plaintiff continued to experience severe pain. At each of these visits, Dr. Skaribas concluded that Plaintiff needed to continue the prescribed pain medication, including narcotics.

On September 19, 2012, Plaintiff formally appealed Defendant's decision to terminate his benefits. Plaintiff submitted an affidavit with his appeal in which he attested that his job occasionally required lifting up to 150 pounds.

On October 18, 2012, at Defendant's request, Dr. Kalen reviewed Dr. Silver's report. Dr. Kalen mentioned the presence of the unfavorable SSA decision but did not discuss any of the ALJ's findings. Dr. Kalen indicated that she unsuccessfully attempted to contact Dr. Skaribas regarding Plaintiff's condition. Dr. Kalen concluded that Plaintiff was not suffering from any medical conditions that limited his ability to work and that Plaintiff's lumbar MRIs were "unremarkable." She also noted that she did not have any of Plaintiff's medical records after April 5, 2012.

On November 21, 2012, Dr. Kalen issued an addendum to her report. She indicated that she had been provided with additional medical records and that her opinion was unchanged. She specifically noted that Plaintiff had undergone an MRI in late 2011 but that she had not received a copy of the MRI images or

---

[15] Administrative Record, M-0960.

report. Relying on Dr. Silver's description of the MRI findings, Dr. Kalen reiterated that her conclusion was unchanged.

On December 6, 2012, Defendant issued a final decision denying Plaintiff's appeal. The decision relies on the opinions of Dr. Silver and Dr. Kalen and specifically concludes that Plaintiff is capable of lifting up to 50 pounds occasionally. Having determined that Plaintiff was able to meet the physical requirements of his "own occupation," Defendant found that Plaintiff no longer met the plan's definition of disabled. Defendant's final decision makes no mention of the SSA decision.

### B. Defendant's Decision was Arbitrary and Capricious

In reviewing Defendant's decision, the Court must consider all of the circumstances surrounding the decision.[16] This includes the medical evidence, any structural conflicts of interest inherent in plan administration, and, where applicable, relevant SSA decisions.[17] In reaching the conclusion that Defendant abused its discretion, the Court relies heavily on the recent Fifth Circuit decision in *Schexnayder v. Hartford Life and Accident Insurance Company*.

In *Schexnayder*, the plaintiff was denied long-term disability benefits by Hartford.[18] Schexnayder claimed to be suffering from several conditions that completely prevented him from working.[19] Hartford agreed that Schexnayder was unable to perform his own occupation and paid him long-term disability

---

[16] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).

[17] *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469–71 (5th Cir. 2010).

[18] *Id.* at 467.

[19] *Id.*

9

benefits under the plan for 24 months.[20] After 24 months, however, the plan's definition of disability changed.[21] In order to receive more than 24 months of disability payments, Schexnayder was required to demonstrate that he was unable to perform *any* occupation.[22] Hartford concluded that Schexnayder was able to perform full-time sedentary work.[23] Because Schexnayder was not incapable of working, Hartford declined to pay any additional benefits.[24] Schexnayder appealed and Hartford employed several reviewing physicians who concluded that he was capable of performing some work.[25] Relying on these conclusions, Hartford denied benefits.[26]

After exhausting his administrative remedies, Schexnayder filed suit in federal district court.[27] The district court issued judgment for Schexnayder and Hartford appealed.[28] On appeal, the Fifth Circuit noted that Hartford's investigation revealed conflicting medical evidence regarding the extent of Schexnayder's physical limitations.[29] Specifically, Hartford's reviewing physicians questioned the credibility of Schexnayder's pain complaints and concluded that the complaints were not consistent with the objective medical

---

[20] *Id.*

[21] *Id.* at 467–68.

[22] *Id.* The plan at issue in this case contains a similar provision.

[23] *Id.* at 468.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 469.

10

evidence.[30] In the face of this conflicting testimony, the Fifth Circuit held that the decision was based on substantial evidence.[31]

This analysis, however, did not complete the Court's inquiry. The Court was required to consider the impact of any conflict of interest.[32] The Court noted that Hartford not only funded the plan but also made the benefits determinations.[33] The Court found that this structural conflict of interest was exacerbated by the absence of any control measures designed to minimize the impact of the conflict.[34] Finally, the Court held that Hartford's failure to address the SSA finding that contradicted its decision constituted procedural unreasonableness.[35] That procedural unreasonableness, coupled with Hartford's structural conflict of interest, compelled the conclusion that Hartford had abused its discretion.[36]

The instant matter is materially indistinguishable from *Schexnayder*. Defendant's investigation revealed conflicting medical evidence regarding the extent of Plaintiff's physical limitations. The reviewing physicians questioned the credibility of Plaintiff's pain complaints and concluded that the complaints

---

[30] *Id.*

[31] *Id.* at 470.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 471 ("Because Hartford failed to acknowledge an agency determination that was in direct conflict with its own determination, its decision was procedurally unreasonable.).

[36] *Id.* ("Although substantial evidence supported Hartford's decision, the method by which it made the decision was unreasonable, and the conflict, because it is more important under the circumstances, acts as a tiebreaker for us to conclude that Hartford abused its discretion.").

were not consistent with the objective medical evidence.

As in *Schexnayder*, Defendant, MetLife, has a structural conflict of interest. Specifically, MetLife both administers and funds the plan. Thus, Defendant's decision to pay or deny benefits directly impacts its bottom line. Additionally, there is no evidence that Defendant has taken any significant steps to minimize the impact of the conflict.

Finally, Defendant failed to address the SSA decision that contradicted Defendant's decision to deny benefits. Defendant insists that this case is distinguishable from *Schexnayder* because *Schexnayder* involved a favorable SSA decision, while the decision in Plaintiff's case was unfavorable. This is a distinction without a difference. While it is true that the SSA declined to award Plaintiff disability benefits, the ALJ judge specifically found that "[t]he physical demands of [Plaintiff's] past work exceed his residual functional capacity."[37] The SSA decision was in direct conflict with Defendant's finding that Plaintiff can return to work as a bodyman. Defendant's denial does not mention, much less attempt to address, this discrepancy.[38]

Indeed, the record is devoid of any evidence that would suggest that Defendant afforded the SSA decision any consideration at all. Dr. Kalen mentions that the SSA denied benefits but does not discuss the decision. The Court cannot say with confidence that Dr. Kalen or any of Defendant's employees even *read* the ALJ's decision. Instead, it appears that Defendant may

---

[37] Administrative Record, M-0960.

[38] *Id.* at M-0721–00725.

have viewed the fact that the decision was unfavorable as a fact supporting its decision to deny benefits.

Considering the contradictory medical evidence, the failure to address the SSA decision and Defendant's structural conflict of interest, the Court finds Defendant's denial of benefits was an abuse of discretion and grants summary judgment to Plaintiff. It is important to note, however, the outer boundaries of the Court's decision today. The Court has granted judgment to Plaintiff because Defendant unreasonably concluded that Plaintiff was able to return to work as a bodyman. Under the terms of the plan, this decision entitles Plaintiff to precisely eight days of benefits, from April 5–12, 2012. On April 12, 2012, the plan's definition of disability changed. After April 12, Plaintiff would only receive benefits if he could demonstrate that he was unable to earn 60% of his predisability earnings at *any* gainful occupation.[39] Because Defendant never reached a conclusion on this issue, the question of Plaintiff's entitlement to benefits under this provision is not before the Court and the Court expresses no opinion.

### C. Attorney's Fees

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."[40] In deciding whether to award attorneys' fees to a particular party,

> a court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad

---

[39] *Id.* at M-0018.

[40] 29 U.S.C. § 1132(g)(1).

>faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merit of the parties' positions. No one of these factors is necessarily decisive, and some may not be appropriate in a given case, but together they are the nuclei of concerns that a court should address in applying section [1132(g)(1)].[41]

Applying the factors to this case, the Court cannot find any evidence of bad faith on the part of Defendant. Examples of bad faith conduct include, situations in which "the insurer provide[s] additional compensation for plan administrators who den[y] claims or [] the insurer has a history of biased claims."[42] In the absence of such evidence in this case, the Court finds that the first factor weighs against the award of attorney's fees. There is no question that Defendant has the ability to satisfy an award, therefore the second factor weights in favor of an award. Awarding attorney's fees to Plaintiff in this case may have some deterrent effect on future benefits decisions made by Defendant, therefore the Court finds that the third factor weighs slightly in favor of an award. Plaintiff in this case has not presented any significant legal question, nor does he seek to benefit all participants of the plan at issue, therefore the Court finds that the fourth facts weighs against an award. Finally, as the Court has already

---

[41] *Schexnayder*, 600 F.3d at 471 (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)).

[42] *Id.*

14

explained, Defendant's decision, while ultimately incorrect, was based on substantial evidence. Therefore, the Court does not find that the relative merit of the parties positions was so drastic as to justify an award and the fifth factor weighs against an award. Viewing the factors together, and in light of the fact that the Fifth Circuit held than an award of fees under similar circumstances was an abuse of the district court's discretion,[43] the Court declines to award fees in this case.

### D. Pre-judgment Interest

Plaintiff also requests pre-judgment interest. Federal courts have the discretion to award pre-judgement interest in ERISA cases.[44] Because there is no federal statute governing the rate of pre-judgment interest in ERISA cases, courts ordinarily look to state law.[45] In this case, the Court elects to award pre-judgment interest from the date of the denial of benefits, April 5, 2012 until the entry of final judgment in this case, at the rate provided in Louisiana Revised Statute 13:4202. In this case, that rate is 4%.[46] Post-judgment interest will accrue at the federal rate.[47]

## CONCLUSION

---

[43] *Id.*

[44] *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 983–84 (5th Cir. 1991).

[45] *Id.*

[46] The Louisiana judicial interest rates are published by the Louisiana Bar Association and available on its website. https://www.lsba.org/Members/JudicialInterestRate.aspx

[47] *See Enhanced La. Capital v. Brent Homes,* No. 12–2409, 2013 WL 5428687, at *4 (E.D. La. June 6, 2013).

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion is **DENIED**.  In order to assist the Court in entering a final judgment, the parties shall submit a stipulation to the Court, no later than December 5, 2014, as to the amount of benefits due to Plaintiff for the period of April 5–12, 2012.  By entering this stipulation, Defendant shall not waive any rights it may have to challenge this Order or the final judgment in this matter, on appeal or otherwise.  If the parties cannot agree on the amount of benefits due pursuant to this Order, Plaintiff shall file a motion to determine the issue.

New Orleans, Louisiana, this 25th day of November, 2014.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**